UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| ROBERT L. BUTTERFIELD, | 3:14-cv-00049-MMD-WGC |
|---|---|
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| LEGRAND, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion for Summary Judgment. (ECF No. 36.)[1] Plaintiff filed a response (ECF Nos. 40, 42)[2] and Defendants filed a reply (ECF No. 43).

After a thorough review, the court recommends that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate incarcerated within the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl., ECF No. 5.) He is proceeding pro se in this action brought pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). (*Id*.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC) and Northern Nevada Correctional Center (NNCC). (*Id*.)

Defendants are LCC Warden Robert LeGrand, LCC Associate Warden Tara Carpenter, NNCC Warden Isidro Baca, NNCC Associate Warden Lisa Walsh, LCC's Dr. John Scott, LCC's

---

[1] Refers to court's electronic case filing (ECF) number.

[2] The court allowed Plaintiff to supplement his opposition. (*See* ECF No. 41.)

1  Dr. William Donnelly, LCC's Dr. John Van Horn, NNCC's Dr. Karen Gedney, Medical Director
2  Dr. Romeo Aranas, LCC Nurse Katherine Hegge, and LCC Nurse Donald Poag. (*Id.*)

3  Plaintiff alleges that between June 2010 and June 2013, he was seen by multiple doctors
4  and health care providers who recommended special footwear to combat issues he is
5  experiencing with his feet as a result of his diabetes. (ECF No. 5 at 5.) He avers that despite this,
6  the institutions refuse to provide the shoes, and he is indigent so he cannot purchase them. (*Id.*)

7  Specifically, he claims that he saw Dr. Scott at LCC in June 2010, who recommended
8  that Plaintiff obtain medical shoes providing proper arch support. (*Id.* at 6.) Plaintiff asked
9  medical how to obtain the shoes as he was indigent, and he was advised to kite laundry and give
10 his shoe size. (*Id.*) He was issued deck shoes with no arch support. (*Id.*)

11 Then, in March 2013, he was seen by Dr. Donnelly at LCC, who also said Plaintiff
12 needed medical shoes with arch support. (*Id.*) Plaintiff again kited medical to see how to obtain
13 the shoes. (*Id.*) Nurse Poag told him he had to obtain them from the canteen or the package
14 program, and Plaintiff contends that neither of these services carries medical shoes, and in any
15 event, it would be impossible for an indigent person to obtain them. (*Id.*)

16 On April 7, 2013, Plaintiff discovered that a black inmate on his tier was issued medical
17 shoes from the infirmary for his feet, which Plaintiff claims is discriminatory. (*Id.*)

18 He alleges that as of June 3, 2012, defendants LeGrand, Carpenter, Dr. Scott,
19 Dr. Van Horn, Dr. Donnelly, Nurse Hegge, and Nurse Poag were aware of the recommendation
20 that Plaintiff obtain medical shoes with arch support, but he has been denied the shoes. (*Id.*)

21 He eventually saw Dr. Van Horn in place of Dr. Scott, who agreed with Dr. Scott's and
22 Dr. Donnelly's recommendation concerning the shoes. (*Id.* at 7.)

23 Plaintiff alleges that a result of the failure to provide him with treatment, *i.e.*, proper
24 medical footwear, he now has a bone spur on his left heel. (*Id.* at 8.)

25 Plaintiff was allowed to proceed with the following claims based on these allegations: (1)
26 an Eighth Amendment deliberate indifference to serious medical needs claim against defendants
27 LeGrand, Carpenter, Baca, Walsh, Dr. Gedney, Dr. Scott, Dr. Van Horn, Dr. Donnelly, Nurse
28 Hegge, Nurse Poag and Dr. Aranas; (2) an equal protection claim against defendants LeGrand,

1  Carpenter, Dr. Scott, Dr. Van Horn, Dr. Donnelly, and Nurse Hegge; and (3) an ADA claim
2  against defendants LeGrand, Carpenter, Baca, Walsh, Dr. Gedney, Dr. Scott, Dr. Van Horn,
3  Dr. Donnelly, Nurse Hegge, Nurse Poag and Dr. Aranas. (*See* ECF Nos. 3, 6.)
4        Defendants now move for summary judgment. (ECF No. 36.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

1  the outcome of the suit under the governing law will properly preclude the entry of summary
2  judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.
3        In deciding a motion for summary judgment, the court applies a burden-shifting analysis.
4  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must
5  come forward with evidence which would entitle it to a directed verdict if the evidence went
6  uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing
7  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*
8  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations
9  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or
10 defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate
11 an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party
12 failed to make a showing sufficient to establish an element essential to that party's case on which
13 that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-
14 25 (1986).
15       If the moving party satisfies its initial burden, the burden shifts to the opposing party to
16 establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*
17 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of
18 material fact, the opposing party need not establish a genuine dispute of material fact
19 conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a
20 jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,*
21 *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and
22 citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find
23 for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v.*
24 *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot
25 avoid summary judgment by relying solely on conclusory allegations that are unsupported by
26 factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the
27 pleadings and set forth specific facts by producing competent evidence that shows a genuine
28 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Request for Enlargement of Time**

At the end of his amendment to his opposition to Defendants' motion, Plaintiff states that he is seeking legal help to assist him in this case through the Department of Justice. (ECF No. 42 at 6.) He requested a sixty-day enlargement of time so that he could hear back from the Department of Justice. (*Id*. at 7.)

It has been over five months since Plaintiff filed this request for an enlargement of time, and he has not filed any document indicating that he has heard back from the Department of Justice.

To the extent Plaintiff mentions that he sent originals of his documents related to this case to the Department of Justice, Plaintiff does not state what those documents were or whether they were germane to responding to Defendants' motion. The documents relevant to this case are Plaintiff's medical records and perhaps any kites or grievances related to his medical condition. Plaintiff had ample time to kite to review his medical file and submit whatever documentation he thought necessary with his opposition or amendment to his opposition. Moreover, he could have requested the kites or grievances in discovery from the defendants. Importantly, Plaintiff has not filed any additional documentation in connection with this case in the five plus months that have

1  passed since he filed this request. Therefore, the court does not find grounds exist to delay
2  deciding Defendants' motion on this basis.
3      The court will now proceed with its analysis.
4  **B. Eighth Amendment Deliberate Indifference**
5      **1. Standard**
6      A prisoner can establish an Eighth Amendment violation arising from deficient medical
7  care if he can prove that prison officials were deliberately indifferent to a serious medical need.
8  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).
9      A claim for deliberate indifference involves the examination of two elements: "the
10 seriousness of the prisoner's medical need and the nature of the defendant's response to that
11 need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir.
12 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need
13 exists if the failure to treat a prisoner's condition could result in further significant injury or the
14 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429
15 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in
16 nature include "an injury that a reasonable doctor or patient would find important and worthy of
17 comment or treatment; the presence of a medical condition that significantly affects an
18 individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974
19 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted)
20 (finding that inmate whose jaw was broken and mouth was wired shut for several months
21 demonstrated a serious medical need).
22     If the medical need is "serious," the plaintiff must show that the defendant acted with
23 deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation
24 omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,
25 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or
26 even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action
27 under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present
28 when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

1  official must both be aware of the facts from which the inference could be drawn that a
2  substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,
3  511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

**2. Summary of Argument**

In his declaration, Nurse Poag states that he has reviewed Plaintiff's medical file and there is no indication that Plaintiff has ever been prescribed special medical footwear by a treating physician. (Poag Decl., ECF No. 37-1 ¶ 6.) In addition, he states that inmates at LCC do not receive medical shoes unless there is a specific order from a medical provider prescribing shoes beyond those normally provided by the prison's laundry for treating a medical condition. (*Id*. ¶ 7.)

He points out that Plaintiff received treatment for issues related to his feet on various occasions between 2010 and 2014. (*Id*. ¶ 8.) An August 28, 2013 X-ray of Plaintiff's left foot revealed no fracture or dislocation or evidence of significant degenerative changes. (*Id*. ¶ 9.) Only a small plantar calcaneal spur was noted. (*Id*.)

Dr. Donnelly evaluated Plaintiff as part of his Chronic Disease Clinic follow-up for his diabetes and hepatitis C on March 22, 2013, and recommended that Plaintiff obtain better foot support to include arch supports to alleviate pain associated with the heel spurs he detected on Plaintiff's feet. (Dr. Donnelly Decl., ECF No. 37-2 ¶ 7.) According to Dr. Donnelly, diabetic neuropathy affecting the foot cannot be cured by footwear or arch support. (*Id.* ¶ 6.)

Dr. Donnelly reviewed Plaintiff's medical file, and did not identify any medical diagnosis of diabetic neuropathy or any other foot condition posing a significant threat to his health which would require prescribed special diabetic footwear. (*Id*. ¶ 8.) X-rays were taken of the foot in August 2013, which revealed a small plantar calcaneal spur, but this is unrelated to his diabetic condition and does not pose a significant threat to his health. (*Id*. ¶ 9.) Plaintiff was prescribed heel cups in June of 2013, which should have helped to alleviate any pain he may have been experiencing related to the small plantar calcaneal spur. (*Id*. ¶ 10.)

In his opposition, Plaintiff reiterates his claim that Dr. Scott and Dr. Donnelly both said that Plaintiff needed medical shoes with arch supports, and Dr. Van Horn agreed with this

1  recommendation. (ECF No. 40 at 1.) Plaintiff indicates that if his medical records do not indicate
2  he suffers from peripheral neuropathy, then the medical staff left it out of his file, because
3  Dr. Van Horn and Dr. Gedney diagnosed him with this condition when he got to NNCC. (*Id*.) He
4  contends that he has peripheral neuropathy which includes his chronic foot pain which presents
5  with numbness, stabbing and burning sensations and tingling. (ECF No. 42 at 2.)
6       He argues that neither inserts nor heel cups provide arch support. (ECF No. 40 at 1.) He
7  questions whether his left heel bone spur was caused from a lack of proper footwear. (*Id*.) He
8  adds that he might have plantar fasciitis as well. (*Id*. at 2.) He indicates that when he arrived to
9  NNCC, he asked Dr. Gedney for medical shoes and she told him, "NNCC no longer gives
10 medical shoes either." (*Id*.)
11      Plaintiff acknowledges that it may well be true that diabetic peripheral neuropathy
12 affecting the feet cannot be cured by footwear and arch support, but he says he might have
13 developed the bone spur and peripheral neuropathy because he did not receive proper footwear.
14 (ECF No. 42 at 2.)
15      **3. Analysis**
16      Plaintiff alleges that multiple medical providers have diagnosed him with a medical need
17 for proper shoes to address the issues he is having with his feet due to his diabetes (neuropathy),
18 but the institutions have refused to provide them and he is indigent and unable to purchase them.
19 He alleges that without this treatment, he could suffer from amputations or death. He contends
20 that as a result of the lack of treatment, he has now developed a bone spur on his left heel.
21      Preliminarily, the record does not reflect that Plaintiff was ever diagnosed with diabetic
22 neuropathy, or a physician order prescribing medical footwear to treat a diabetic related foot
23 condition. (Dr. Donnelly Decl., ECF No. 37-2 ¶ 8.) In any event, diabetic neuropathy affecting
24 the foot cannot be cured by footwear or arch support. (Dr. Donnelly Decl., ECF No. 37-2 ¶ 6.)
25 Instead, neuropathy is prevented with tight blood sugar control and a healthy lifestyle. (*Id*.)
26      On March 22, 2013, Dr. Donnelly saw Plaintiff for a follow up in the Chronic Disease
27 Clinic, and recommended that Plaintiff obtain better foot support to include arch supports to
28 alleviate pain associated with the heel spurs he detected on Plaintiff's feet. (Dr. Donnelly Decl.,

1  ECF No. 37-2 ¶ 7; ECF No. 37-6 at 2.) It is notable that there is no order or prescription for
2  special diabetic shoes, but only a recommendation that Plaintiff use arch support.
3  Plaintiff was subsequently prescribed heel cups in June 2013, and insoles in October
4  2013 related to the bone spur in his heel. (Dr. Donnelly Decl., ECF No. 37-2 ¶¶ 9, 10; ECF No.
5  37-3 at 3, 8.) An X-ray of the foot was ordered, and an August 20, 2013 radiology report notes
6  no fracture, dislocation or significant degenerative changes to the foot, but a small plantar
7  calcaneal spur was evident. (ECF No. 37-5 at 2.) According to Dr. Donnelly, this condition is not
8  related to Plaintiff's diabetes and does not pose a serious risk to Plaintiff's health. (Dr. Donnelly
9  Decl., ECF No. 37-2 ¶¶ 8, 9.) Nor does Plaintiff's medical file include a diagnosis for any other
10 foot condition posing a significant threat to his health which would require prescribed special
11 diabetic footwear. (*Id*.) According to Dr. Donnelly, the heel cups prescribed in June 2013 should
12 have helped to alleviate any pain Plaintiff was experiencing related to the small plantar calcaneal
13 spur. (Dr. Donnelly Decl., ECF No. 37-2 ¶ 10.)
14 The court finds there is no evidence in the record that Defendants were deliberately
15 indifferent to an excessive risk to Plaintiff's health. Plaintiff's speculation that his bone spur was
16 caused by the lack of special medical footwear is unsupported by any evidence, and insufficient
17 to raise a genuine dispute as to any material fact. Plaintiff's allegation that Defendants left
18 information out of his medical file is similarly unsubstantiated. Therefore, Defendants' motion
19 for summary judgment should be granted as to this claim.

**C. Equal Protection**

21 Plaintiff alleges that his equal protection rights were violated when a black inmate at
22 LCC was provided with special medical shoes, while Plaintiff, a white inmate, was not.
23 The Fourteenth Amendment prohibits the denial of "the equal protection of the laws."
24 U.S. Const. amend XIV, § 1. It "commands that no State shall deny to any person within its
25 jurisdiction the equal protection of the laws, which is essentially a direction that all persons
26 similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.
27 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Prisoners
28 are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious

discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Under section 1983, an inmate Plaintiff must present evidence of an intent to discriminate against the plaintiff based upon his membership in a protected class. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano*, 345 F.3d at 1082 (citation omitted).

In his opposition, Plaintiff identifies the black inmate he claims received medical shoes at LCC, and asserts that he is diabetic. (ECF No. 40 at 2.) Plaintiff reiterates his claim that NDOC has issued medical shoes to other inmates, but denied his requests. (*Id*. at 3.)

There is no evidence that Defendants did not provide Plaintiff with special medical shoes based on his race. Plaintiff states in his opposition, without providing any supporting evidence, that a black inmate at LCC, who is diabetic, was provided with special medical shoes. There is simply no evidence in the record to support Plaintiff's claim that Defendants intended to discriminate against him based on his race by not providing him with medical shoes. This conclusion is supported by the fact that there is no diagnosis of a condition related to Plaintiff's diabetes (or otherwise) that would require prescribed diabetic footwear. Plaintiff's speculation of discriminatory intent is insufficient to raise a genuine dispute of material fact at the summary judgment stage. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted). Therefore, Defendants' motion for summary judgment should be granted as to this claim.

**D. ADA**

Title II of the ADA "prohibit[s] discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The ADA applies to inmates in prison. *See Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 208-210 (1998) (acknowledging that "[m]odern prisons provide inmates with

many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')"); *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010) (noting decisions affirming that ADA and RA apply to state prisoners); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (applying ADA and RA to prisoner's claims); *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *Duffy v. Riveland,* 98 F.3d 447 (9th Cir. 1996).

"In ADA cases, the plaintiff bears the burden of establishing the elements of the prima facie case[.]"*Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008). A plaintiff pursuing a claim under the ADA A must show:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).

The ADA encompasses all services, programs, and activities provided by a prison to its prisoners. *See, e.g., Armstrong v. Wilson*, 124 F.3d 1019, 1024 (9th Cir. 1997).

Plaintiff claims his disability is his diabetes, and that he has been denied medical services from NDOC as a result of this disability. This claim is not supported by the record. First, there is no evidence that Plaintiff was excluded from receiving medical services (*i.e.*, medical footwear, or any other service) as a result of his disability. Plaintiff was evaluated for complaints related to his feet on various occasions between 2010 and 2014. His medical file reveals he was never diagnosed with diabetic neuropathy, or any other condition of the foot that would require prescribed medical footwear. It was recommended that he get arch supports, and heel cups and insoles were actually prescribed in connection with a bone spur, that is unrelated to his medical condition and does not pose a significant risk to his health. These facts contradict any allegation of a denial of medical care or discrimination based on Plaintiff's diabetic condition.

Therefore, Defendants' motion for summary judgment should be granted as to this claim.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 36).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: December 23, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE